The judgment of the United States Customs Court is *reversed*.

UNITED STATES *v.* GERARDO OLIVO (No. 3512)[1]

United States Court of Customs and Patent Appeals, May 2, 1932

*Charles D. Lawrence,* Assistant Attorney General (*Reuben Wilson* and *Thomas J. McKenna,* special attorneys, of counsel), for the United States.

*Irving I. Hartman* for appellee.

[Oral argument April 15, 1932, by Mr. McKenna; submitted on brief by appellee]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The appeal in this case involves a construction of paragraph 1514 of the Tariff Act of 1922, the applicable portion of which reads as follows:

PAR. 1514. Articles the growth, produce, or manufacture of the United States, when returned after having been exported, without having been advanced in value or improved in condition by any process of manufacture or other means if imported by or for the account of the person who exported them from the United States; * * *.

---

[1] T. D. 45645.

The collector at the port of San Juan, P. R., assessed duty under paragraph 372 of said act at 30 per centum ad valorem upon a coffee-roasting machine imported from Venezuela.

The appellee protested said classification and assessment of duty and claimed the merchandise entitled to free entry under the provisions of paragraph 1514, *supra*, as American goods returned. Appellee's protest states, among other things, the following:

This outfit was bought by me on June 24, 1929, from Messrs. Jabez Burns & Sons (Inc.), of Eleventh Avenue and Forty-third Street, New York City, and it was shipped to me by those gentlemen through their customs brokers, Messrs. M. Farris & Co., of 8–10 Bridge Street, also of New York City. This shipment was made on July 15, 1929, per steamship *Lara*.

At the trial of the case in the court below, the cashier of Jabez Burns & Sons (Inc.), the manufacturers, identified his firm's acknowledgment of an order for a No. 7 coffee-roasting outfit which is evidently the outfit in controversy. The terms of sale referred to consist of the price, $1,242, less deduction of 25 per centum, making the sale price $931.50, of which sum $250 cash was received with the order and $756.50 was paid before shipment. The sum of $756.50 included $75, approximate shipping expenses. According to the acknowledgment of the order the cartage, marine insurance and other shipping expenses were prepaid by the purchaser of the machine. There is no evidence in the record as to when title passed to the property, as to whether Olivo was in the United States at the time of giving the order for the machine, or whether Olivo was a citizen of or resident in the United States when the purchase was made.

The certificate of exportation shows that the exportation was made by M. Farris & Co. for the account of Jabez Burns & Sons (Inc.). It is explained in the record that M. Farris & Co. are the customhouse brokers for Jabez Burns & Sons (Inc.).

Appellee states in his brief that Olivo was a former resident of Venezuela, but was a resident of the United States at the time of importing the machine into Porto Rico. The brief further states—

Upon payment and passing of title, he became the owner of the outfit, and it was subject to his sole directions and control. He caused it to be shipped to himself at Venezuela and, before it became an article of commerce of Venezuela, he caused it to be reshipped to himself in the United States (Porto Rico), to where he had changed his residence.

It is not necessary to determine what our holding would be if the record supported the above-quoted statement found in appellee's brief. The record does not support such statement.

Congress by the enactment of paragraph 1514, *supra*, evidently intended that certain goods made in the United States, shipped out of the United States and returned to the United States, should, upon return, be free of duty. But it did not provide that *all* goods made

in the United States, shipped therefrom and returned thereto, should be free. Only such articles as were the growth, produce, or manufacture of the United States, which had been exported and not advanced in value or improved in condition, and which were imported "by or for the account of the person who exported them from the United States" were to be admitted free.

The sole question in this case is: Who was the exporter of the merchandise? It may be that Olivo or his agent exported the goods, but this record does not show this fact, nor does the record contain sufficient facts from which this court can determine who the exporter was.

To hold with appellee on this record would be to hold that all goods which had been paid for and shipped to a foreign purchaser from the United States, if returned by the purchaser, would be free of duty. The language used is not broad enough to warrant such a result. The goods must be imported by or for the account of the person who exported them.

The Government takes the position that the exportation is not completed until it reaches the foreign country and that a foreigner purchasing goods in the United States for delivery in the foreign country is not the exporter from the United States within the meaning of the paragraph. The Government further contends that the paragraph did not intend that goods which had been exported by an American producer might be returned to this country by the purchaser and thus be put in competition with the goods which the producer sold in this country.

It was suggested in argument that no one could import goods which had been exported from the United States unless he be a citizen or a resident of the United States and that paragraph 1514, *supra*, was enacted for the benefit of those interested in commerce in this country and not for those interested in the commerce of another country.

It is unnecessary for us to express our views upon these various contentions. Upon the record before us there is no sufficient showing on the part of appellee to warrant a discussion or decision of these questions raised and it is sufficient for us to hold that an order given by a foreign purchaser accompanied by payment before shipment is not sufficient to show that the foreign purchaser is the exporter of the goods.

Appellee and the court below relied somewhat upon a ruling by the Treasury Department in T. D. 39296, in which it was said that the department was of the opinion that the purchaser for whose account the goods were shipped abroad is the exporter within the meaning of paragraph 1514. The said Treasury Department ruling also called attention to the fact that to entitle such goods to free entry certain customs regulations had to be complied with. The court below held,

after quoting said Treasury decision, that the regulations had been complied with and that—

the record clearly establishes that at the time the merchandise was shipped from the United States to Venezuela, it was owned by Gerardo Olivo and was shipped to Venezuela for his account.

The opinion of the department, of course, is not binding upon the courts in construing the paragraph under consideration, and we disagree with the lower court that the record establishes that Olivo was the exporter within the meaning of the paragraph.

The protest should have been overruled. The judgment of the United States Customs Court is *reversed*.